UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREA KRUEGER,

      Plaintiff,

v.

CASE NO. 8-04-CV-142-T-MAP

HILLSBOROUGH COUNTY SHERIFF'S
DEPUTY STUART BELL and DAVID GEE,
in his official capacity as Sheriff of Hillsborough
County, a Political subdivision of the State of
Florida,
      Defendants.

_____/

## **ORDER**

Plaintiff is a preschool teacher in her mid-twenties who has suffered from epilepsy since she was a small child. Despite driving in the wrong lane and performing poorly on field sobriety tests, she claims a deputy sheriff arrested her for DUI without probable cause. Accordingly, she brings this § 1983 action against the deputy for violating her Fourth Amendment guarantees, against the sheriff for inadequately training his deputies to be cognizant of epileptic symptoms, and levels state claims against both Defendants for false arrest and false imprisonment (doc. 39). The Defendants, on the hand, deny any constitutional violation occurred and move for summary judgment (doc. 43, 47). After considering the summary judgment record, I agree with the Defendants and grant their motions.[1]

---

[1] The parties consented to my jurisdiction (doc. 23). *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

*A. Standard of Review*

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.*

*B. Facts*

The material facts are not in dispute. Bearss and Florida Avenues are major traffic arteries which intersect in northern Hillsborough County a short distance from Interstate 275. Bearss runs east and west; Florida runs north and south. On August 6, 2002, at about 7:00 p.m., the Plaintiff pulled out of the Burger King located at the southeastern corner of this busy intersection intent on driving southbound on Florida. When she realized a concrete median in the middle of Florida Avenue prohibited this, she turned into Florida's northbound lane (namely, toward oncoming traffic) and headed south. Deputy Kenney observed all this and stopped her.[2]

Kenney noticed Plaintiff seemed distracted during routine questioning about her

---

[2] Kenney served as a volunteer deputy and is not named as a defendant. *Kenney deposition,* doc. 44, Ex. A, pp.8-9.

driver's license, vehicle registration, and proof of insurance. She slurred her speech, talked without moving her lips and with her eyes half-closed. Suspecting she might be impaired, he twice asked if she suffered from a medical impairment or was taking any medications that would cause her to act in such a manner. Although Kenney claims Plaintiff denied taking anything, Plaintiff says she warned him about her epilepsy by pointing to her medic alert bracelet and informed him she was taking Klonopin and Depakote, medicines that caused her drowsy appearance.[3] She recalls trying to tell Kenney about her medical condition but was not given adequate time to explain. *Krueger deposition*, doc. 44, Ex. B, pp. 41-42.

Kenney, sensing something was "just not right," radioed for DUI backup. A DUI investigator, Defendant Bell, arrived and noticed what Kenney had spotted. Plaintiff's eyes looked "glassy." Her movements seemed slow. She swayed slightly as she exited her car. *Bell deposition*, doc. 44, Ex.C, p. 46. Her eyes involuntarily jerked during the horizontal gaze nystagmus test ("HGN").[4] *Id.* at pp. 47, 51. Confronted by all this, Bell asked if she had taken any medications. Bell says she initially denied taking anything but later admitted to taking Klonopin and Depakote after a consensual search of her vehicle turned up a baggy with three pills. *Bell deposition,* doc. 44, Ex. C, pp. 54-55.

Plaintiff performed poorly on the sobriety tests. With these results, her driving in

---

[3] Klonopin, which is a Schedule IV controlled substance, is indicated for seizures and panic disorders; it can interfere with cognitive and motor performance. *Physicians' Desk Reference, 58th ed.* (2004) at pp. 2920-21. Depakote is indicated for epilepsy. *Id.* at 434-440. Plaintiff says she has taken anti-seizure drugs for approximately fifteen years and denies they impact her ability to perform necessary daily activities.

[4] A common side effect of Plaintiff's seizure medication is "nystagmus," an involuntary shaking or trembling of the eye (doc. 56 at p. 3). She also suffers from strabismus, a condition that causes her eyes to appear crossed and unfocused. *Id.*

the wrong direction, and her personal contact cues, Bell concluded she was impaired by a central nervous system depressant and arrested her for DUI. *Bell deposition*, doc. 44, Ex. C, p. 64. She was then transported to the Central Breath Testing facility and underwent a breathalyzer test, which failed to detect alcohol.[5] The State Attorney eventually charged the Plaintiff with DUI but then dismissed the case.

*C. Discussion*

*1. § 1983 claim against Deputy Bell (count one)*

Obviously, an arrest without probable cause violates the Fourth Amendment. *Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11th Cir. 1997). Probable cause for an arrest exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information and sufficient in themselves to warrant a belief by a prudent person that an offense has been committed or is being committed by the person to be arrested. *Beck v. Ohio,* 379 U.S. 89, 91 (1964); *Pickens v. Hollowell,* 59 F.3d 1203, 1205 (11th Cir. 1995). Because probable cause "does not deal with hard certainties, but with probabilities," law enforcement officers are entitled to formulate certain "common-sense conclusions about human behavior." *Illinois v. Gates,* 462 U.S. 213, 231-32 (1983).

While the parties cite these standards, they misapply them. When qualified immunity is at stake, like it is here, the court measures probable cause using a slightly different perspective. *See Von Stein v. Brescher,* 904 F.2d 572, 578-79 (11th Cir. 1990) ("intertwined

---

[5] After being released well after midnight, Plaintiff's family took her directly to the hospital emergency room for a blood test. The test revealed presence of Klonopin at the low end of the normal range.

4

with question of probable cause is the issue of qualified immunity"). For qualified immunity, the issue is not whether there was probable cause but whether there was *arguable* probable cause to arrest. *Crosby v. Monroe County,* 394 F.3d 1328, 1332-33 (11th Cir. 2004); *Madiwale,* at 1324 (emphasis supplied).[6]

The Supreme Court has repeatedly stressed qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. at 200-201 quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) (emphasis in original). The doctrine offers complete protection for government officials who are sued in their individual capacities where "their conduct violates no clearly established statutory or constitutional rights that a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Its purpose is to shield from suit "all but the plainly incompetent or one who is knowingly violating the federal law" thereby allowing government officials to carry out their discretionary duties without fear of personal liability or harassing litigation. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001). To be eligible for qualified immunity, the official must establish that he was engaged in a discretionary function at the time of the alleged violation. If the official satisfies that demand, the plaintiff must then show the

---

[6] Although Bell does not mention qualified immunity in his summary judgment papers, he pleads qualified immunity as a defense in his answer to Plaintiff's third amended complaint (doc. 39). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Johnson v. Breedon*, 280 F.3d 1308 (11th Cir. 2002) quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

defendant has committed a constitutional violation and that the constitutional right the defendant violated was "clearly established" at the time. *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Crosby,* 394 F.3d at 1332.

The first part of the test is easy here. Making an arrest is an official duty a deputy sheriff performs. Hence, the core issue is whether Bell arguably had probable cause to conclude the Plaintiff was driving under the influence. Arguable probable cause means: "if, under all of the facts and circumstances, an officer reasonably could – *not necessarily would* – have believed that probable cause was present." *Id* at 1332-33. Putting it differently, as long as there is arguable probable cause, qualified immunity applies *even if* actual probable cause did not exist.

Whether the facts here give rise to arguable probable cause depends on the elements for DUI under § 316.193 (Fla. Stat.), which in relevant part provides:

> A person is guilty of the offense of driving under the influence . . . if the person is driving or in actual physical control of a vehicle within this state and:
> (a) The person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that the person's normal faculties are impaired.

Florida courts construe the statute to require: (1) the arrestee was driving or in actual physical control of the vehicle; (2) the arrestee was under the influence of an alcoholic beverage or a controlled substance; and (3) the arrestee was affected to the extent that his normal faculties were impaired.[7] *State v. Tagner*, 673 So. 2d 57, 58 n.2 (Fla. 4th DCA

---

[7] "[N]ormal faculties include, but are not limited to, the ability to see, hear, walk, talk, judge distances, drive an automobile, make judgments, act in emergencies, and, in general, normally perform the many mental and physical acts of daily life." Fla. Stat. § 316.1934(1) (1993).

1996). In other words, probable cause to arrest for DUI must be based on more than a belief that the driver has consumed alcohol or drugs. Probable cause arises from the facts and circumstances showing a probability that the driver is impaired by alcohol or drugs or has an unlawful amount of alcohol or drugs in his system. *State v. Kliphouse*, 771 So. 2d 16, 22 (Fla. 4th DCA 2000).[8]  Stripped to their core, Plaintiff posits four arguments to defeat summary judgment: sufficient material factual disputes abound with respect to probable cause; her mistake, driving in the wrong lane for a relatively short distance, was innocent and harmless; Bell's observations about Plaintiff's physical status were not inconsistent with her known condition, epilepsy; and Bell should have more fully investigated her condition before arresting her. These last two are versions of the reasonable hypothesis of innocence defense.[9] None of these arguments withstands the qualified immunity test.

---

[8] Thus, when determining probable cause, whether the arrestee's actions constituted a crime or resulted in a conviction are unimportant. *See Storck, supra,* 354 F.3d at 1317; *Scarborough v. Myles*, 245 F.3d 1299, 1303 n.8 (11th Cir. 2001).

[9] Plaintiff essentially argues that Bell knew or certainly should have known about her epilepsy, her strabismus, and nystagmus and should have given her the benefit of the doubt. Namely, her behavior, while perhaps consistent with being impaired, was also consistent with her medical condition and her controlled, appropriate, and routine use of medications, drugs she asserts did not impair her. This type of argument in a criminal case is no longer accepted in the Eleventh Circuit. In federal criminal prosecutions, the former Fifth Circuit at one time took the position that the district court was required to grant an acquittal unless the circumstantial evidence was "inconsistent with every reasonable hypothesis of innocence." In *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*en banc*), the court abandoned that standard. *Bell* held that it was not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *Bell,* obviously, has no real application here other than to serve as an analytical reminder that a fact-finder must look at all the facts. Or, as *Beck* and *Gates* command when measuring probable cause, examining the totality of the facts and drawing common-sense conclusions therefrom.

The facts, from a summary judgment standard, show Bell knew Plaintiff had done or exhibited the following: drove in the wrong direction; exhibited slurred speech and half-closed eyes; was easily distracted from completing tasks; gave inconsistent responses questions; swayed slightly when she exited her vehicle; had difficulty performing the field sobriety tests; and admitted taking medication that could impair her normal faculties. Plaintiff's argument that her physical cues were consistent with her unfortunate condition also means they were consistent with driving under the influence of a chemical substance to the extent that her normal faculties were impaired. And claiming that Bell failed to properly investigate her epilepsy and prescription medications misses the point. Despite her telling Bell she suffers from epilepsy and takes prescription medications to control her symptoms, he could still have reasonably believed she was driving while under the influence. A reasonable investigation does not mean an officer has to take "every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person." *Rankin v. Evans,* 133 F.3d 1425, 1436 (11th Cir. 1998). Probable cause is not judged with clinical detachment, but with a common sense view to the realities of normal life." *Id. (citing Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990)); *see also See Hoffman v. State*, 743 So. 2d 130 (4th DCA 1999) (stating that in a DUI arrest, impairment may be established by describing a person's demeanor and conduct and it is unnecessary to determine the amount of prescription medication in the person's system for the arrest to be proper).[10]

---

[10] Although I find arguable probable cause as required for the qualified immunity defense, I also conclude that Bell's arrest of Plaintiff was objectively reasonable under the totality of circumstances and that a reasonable prudent person would have believed probable cause existed for her DUI arrest. *See Rankin*, *supra,* 133 F.3d at 1433-35.

*2. inadequate training claim (count four)*

Plaintiff seeks to hold the Hillsborough County Sheriff's Department (HCSD) liable under § 1983 for failing to properly train its deputies to be aware of motorists who suffer from epilepsy or other movement/seizure disorders while conducting an investigation for alleged driving under the influence. Frankly, I need not address this claim given that Plaintiff has not shown she suffered a constitutional violation. *See generally City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("if a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point"); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1242 n.13 (11th Cir.2003) (where officer's arrest and use of force were constitutionally permissible, there could be no policy or custom of the city that officially sanctioned or ordered a constitutional violation); *Cuesta v. School Board of Miami-Dade County, Florida*, 285 F.3d 962, 970 n.8 (11th Cir. 2002) (stating that because Cuesta suffered no deprivation of constitutional rights, court need not decide question of whether county policy might deprive others of constitutional rights); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir.1996) (finding that when the deputy's conduct did not cause plaintiff to suffer a constitutional deprivation, there is no need to inquire into the sheriff's department's policy or custom). Nonetheless, Plaintiff has failed to make a sufficient case for defeating summary judgment because she must allege and factually demonstrate a deliberate and intentional failure to take some action when there was a known need to train on a problem of constitutional magnitude. As Defendants assert, the Eleventh Circuit holds that without

notice of a particular need to train, the agency is not liable as a matter of law for its failure to do so. *Wright v. Sheppard*, 919 F.2d 665 (11th Cir. 1990).

Although she has not done so, for purposes of this motion only, I will assume she has set forth facts which establish, or at least create a genuine issue of material fact as to whether the sheriff's department should have had a policy on how to handle epileptic drivers who are suspected of DUI. Municipal liability may be imposed due to the absence of a policy establishing appropriate procedures to ensure against a violation of a person's constitutional rights. *See e.g., Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991) (holding that liability may be imposed due to the existence of an improper policy or from the absence of a policy). In such a case, however, where a plaintiff seeks to establish municipal liability on the municipality's failure to act, the plaintiff must show that the "'policy of inaction' is the functional equivalent of a decision by the city itself to violate the constitution." *City of Canton v. Harris,* 489 U.S. 378, 394-95 (1989). For instance, a plaintiff must establish that the municipality's failure to maintain a policy amounted to deliberate indifference to its known or obvious consequences. *Bd. of Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 407 (1997); *McDowell v. Brown,* 392 F.3d 1283, 1291 (11th Cir. 2004). The Court has warned that "(t)o prevent municipal liability for a . . . decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Bd. of Comm'rs of Bryan County,supra*, at 410.

In "testing the link" between the plaintiff's injury and the municipal policy, the Eleventh Circuit looks to whether the evidence reveals that the municipality should have

known that the plaintiff's injuries would be a "plainly obvious consequence" of that decision. *McDowell*, *supra,* at 1292-93; *City of Canton, supra,* at 390 (holding that municipal liability may be based on a showing that the need for a particular policy is obvious, and the absence of the policy so clearly likely to result in a violation of constitutional rights). For example, in *Rivas v. Freeman, supra,* the Eleventh Circuit found that municipal liability may exist where the sheriff fails to establish policies and procedures concerning the correct and accurate identification of suspects. The court reasoned that the sheriff was responsible for establishing such policies, and he clearly failed to do so. *Id.* at 1495. However, in determining whether the plaintiff had sufficiently established municipal liability, the Eleventh Circuit noted that the plaintiff presented evidence which established that the Sheriff "knew of prior instances of mistaken identity, but allowed his deputies to detain individuals even where discrepancies existed." *Id.*

The claim in this case – that the sheriff's department should have had a standard operating procedure requiring deputies to be aware of drivers who suffer from epilepsy or other movement/ seizure disorders while conducting DUI investigations – falls short of the kind of "obvious" need for a policy that would support a finding of deliberate indifference to constitutional rights. The Plaintiff has not presented any evidence indicating that there have been past incidents of "deliberate indifference" to similarly situated drivers who suffer from epilepsy or movement/ seizure disorders who are subject to DUI investigations. In fact, Deputy Bell testified that prior to his arrest of Plaintiff, he had not been involved in a DUI investigation of a driver with epilepsy or on anti-seizure medication. *Bell deposition*, p. 34. Indeed, Plaintiff has not presented any evidence of prior incidents similar to this one. Thus,

11

this appears to be a singular, isolated situation.

   *D. Conclusion*

   For the reasons stated, it is hereby

   ORDERED:

   1.  Defendants' motions for summary judgment (docs. 43 and 47) as to Counts One and Four are **GRANTED**.

   2.  Plaintiff's state claims (Counts Two and Three) are dismissed without prejudice.[11]

   3.  The Clerk of Court is directed to close the case.

   DONE AND ORDERED at Tampa, Florida November 2, 2005.

   */s/ Mark A. Pizzo*
   MARK A. PIZZO
   UNITED STATES MAGISTRATE JUDGE

---

[11] Though federal courts have the power to hear state law claims which "derive from a common nucleus of operative fact" with a substantial federal claim, the power should not be exercised as a matter of course, especially where the federal claims are dismissed before trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).